# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

THOMAS BROWN,                                :
                                          :
       Petitioner,                    :
    v.                              :    Civil Action No. 18-911-RGA
                                          :
ROBERT MAY, Warden, and                      :
ATTORNEY GENERAL OF THE                      :
STATE OF DELAWARE,                           :
                                          :
       Respondents.[1]                 :

---

## MEMORANDUM OPINION

Christopher S. Koyste, Wilmington, Delaware.  Attorney for Petitioner.

Brian L. Arban, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Respondents.

September *20* , 2021
Wilmington, Delaware

---

[1]Warden Robert May replaced former Warden Dana Metzger, an original party to the case. *See* Fed. R. Civ. P. 25(d).



ANDREWS, UNITED STATES DISTRICT JUDGE:

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") and Memorandum in Support filed by Petitioner Thomas Brown. (D.I. 3; D.I. 18)  The State filed an Answer in opposition, to which Petitioner filed a Reply.  (D.I. 21; D.I. 23)  For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I.   BACKGROUND

### A.  The Crime[2]

In November 2011, Lunnon, an individual who had agreed to assist police in order to avoid a possible life sentence, called Petitioner while Delaware State Police monitored the call, and asked to purchase nine ounces of cocaine, in a combination of powder and crack form. Petitioner explained that he could only get eight ounces.  Lunnon and Petitioner agreed to meet that evening for the exchange.  Police set up surveillance at the exchange site as well as the location from which they believed Petitioner would obtain the cocaine.

Before the exchange could occur, police stopped Petitioner's vehicle. Police ordered Petitioner and his passenger, John Dupree, out of the vehicle.  During a search of the vehicle, police found 216.57 grams of crack cocaine;[3] a loaded, stolen .38 caliber revolver behind the driver's seat; a loaded, stolen 9mm semi-automatic handgun under the front passenger seat; and less than a gram of crack cocaine on Dupree.  Petitioner and Dupree were arrested and charged with two counts of drug dealing, four firearms offenses, and other, related offenses.

_____

[2]The facts are taken from the Superior Court's  unpublished decision denying Petitioner's Rule 61 motion.  (*See* D.I. 16 at 211-212)
[3]In his police report, Delaware State Police Detective Christopher Sutton described finding "a black plastic bag that contained several plastic bags of white powder substance that appeared similar to cocaine." (D.I. 19-10 at 33)

The drug evidence was placed into three Delaware State Police evidence envelopes, one for the suspected powder cocaine, one for the suspected crack cocaine, and one for the bag of suspected cocaine found on Dupree's person. The bags were deposited into the temporary evidence locker at the Delaware State Police troop. The evidence was ultimately sent to the Office of the Chief Medical Examiner ("OCME") for testing.

Once at the OCME, forensic chemist Irshad Bajwa conducted an analysis of the suspected drugs. The pure weights of the three bags of suspected cocaine were 91.04 grams, 125.53 grams, and 0.85 grams. Bajwa concluded, using the gas chromatograph/mass spectrometer technique, that what was contained in all of the bags of evidence sent to the OCME by Delaware State Police for this case was cocaine. All samples of the drugs tested were crack, rather than powder, cocaine.

### B. Petitioner's State Criminal Proceedings

On January 14, 2013, a Delaware Superior Court jury found Petitioner guilty of drug dealing—aggravated possession of cocaine, aggravated possession of cocaine with intent to deliver, receiving a stolen firearm, second degree conspiracy, carrying a concealed deadly weapon and two counts of possession of a firearm during the commission of a felony, but acquitted him of two counts of possession of a firearm during the commission of a felony, one count of receiving a stolen firearm, and one count of carrying a concealed deadly weapon. (D.I. 18 at 7; D.I. 21 at 1); *see Brown v. State*, 89 A.3d 476 (Table), 2014 WL 1258298, at *1 (Del. Mar. 25, 2014). Following a bench trial, Petitioner was also found guilty of possession of a firearm or ammunition by a person prohibited. *See Brown*, 2014 WL 1258298, at *1. The Superior Court sentenced Petitioner to an aggregate seventeen years at Level V, followed by decreasing levels of probation. (D.I. 16 at 210) Petitioner appealed, and on March 25, 2014, the

Delaware Supreme Court affirmed in part and reversed in part; the Delaware Supreme Court vacated one count of possession of a firearm during the commission of a felony after determining that Petitioner's convictions for the two drug offenses merged. *See Brown*, 2014 WL 1258298, at *1, *4-5. On May 30, 2014, the Superior Court resentenced Petitioner to twelve years at Level V incarceration followed by decreasing levels of probation. (D.I. 19-12 at 32-33)

On September 30, 2014, Petitioner filed a timely *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 19-1 at 9, Entry No. 67) On April 28, 2015, the Superior Court appointed counsel to represent Petitioner, who filed an amended Rule 61 motion on February 29, 2016. (D.I. 19-1 at 9, 11, Entry Nos. 71 & 80; D.I. 15 at 210-270) The Superior Court denied the amended Rule 61 motion on June 29, 2017. (D.I. 16 at 209-224) The Delaware Supreme Court affirmed that decision on February 15, 2018. *See Brown v. State*, 180 A.3d 1055 (Table), 2018 WL 921985 (Del. Feb 15, 2018).

On June 19, 2018, Petitioner timely filed the instant § 2254 Petition, followed by a Memorandum in Support, asserting that defense counsel provided ineffective assistance (Claim One) and the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by not disclosing to Petitioner information regarding misconduct at the OCME (Claim Two). (D.I. 3; D.I. 18) The State filed an Answer asserting that Claim One should be dismissed as meritless and Claim Two should be dismissed as procedurally barred. (D.I. 21) Petitioner filed a Reply arguing that the Petition warrants habeas relief. (D.I. 23)

### C. Background Re: OCME Criminal Investigation

The relevant information regarding the OCME evidence mishandling is set forth below:

> In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME.

The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One employee was accused of "dry labbing" (or declaring a test result without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.

There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).

## II.   GOVERNING LEGAL PRINCIPLES

### A.  Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). The exhaustion requirement is based on principles of comity, requiring a petitioner to

give "state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at

844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the

exhaustion requirement by fairly presenting all claims to the state's highest court, either on direct

appeal or in a post-conviction proceeding, in a procedural manner permitting the court to

consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v.*

*Peoples,* 489 U.S. 346, 351 (1989).

A petitioner may be excused from exhausting state remedies when there is either an

absence of an available State corrective process or the existence of circumstances, such as futility

or inordinate delay, that render such processes ineffective. *See* 28 U.S.C. § 2254(b)(1)(B);

*Duckworth v. Serrano*, 454 U.S. 1 (1981). Situations falling within the "ineffective corrective

process" exception to the exhaustion requirement include those instances when "(1) the state

corrective process is so deficient as to render any effort to obtain relief futile []; (2) acts of state

officials have, in effect, made state remedies unavailable to the petitioner []; or (3) 'inordinate

delay' in state proceedings has rendered state remedies ineffective." *Kozak v. Pennsylvania*,

2012 WL 4895519, at *4 (M.D. Pa. Oct 15, 2012). When a failure to exhaust is excused due to

an ineffective corrective process, the court may review a claim on its merits without engaging in

the procedural default analysis. *See, e.g., Lee v. Strickman*, 357 F.3d 338, 344 (3d Cir. 2004);

*Story v. Kindt*, 26 F.3d 402, 405-06 (3d Cir. 1994); *Woodruff v. Williams*, 2016 WL 6124270, at

*1 (E.D. Pa. Oct. 19, 2016).

However, if a petitioner's failure to exhaust does not fall within the aforementioned "ineffective corrective process" exception, and state procedural rules bar the petitioner from seeking further relief in state courts, the claims, while technically exhausted, are procedurally defaulted. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is technically exhausted but procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991)*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989). A federal court cannot consider the merits of procedurally defaulted claims unless the petitioner establishes cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will result absent review of the claims. *See Lines*, 208 F.3d at 160.

### C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. *See* 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a

state court's order is unaccompanied by an opinion explaining the reasons relief has been

denied"; as recently explained by the Supreme Court, "it may be presumed that the state court

adjudicated the claim on the merits in the absence of any indication or state-law procedural

principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011).

Finally, a federal court must presume that the state court's determinations of factual

issues are correct. *See* 28 U.S.C. § 2254(e)(1); *see also Appel*, 250 F.3d at 210. This

presumption of correctness applies to both explicit and implicit findings of fact, and is only

rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *see also*

*Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341

(2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues,

whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

### A.   Claim One:  Ineffective Assistance of Counsel

In Claim One, Petitioner contends that defense counsel provided ineffective assistance by

failing to object to the admission of the cocaine evidence at trial on the basis that there was a

faulty chain of custody.  He asserts that the "substances admitted at trial were not the same as the

substances recovered from [Petitioner's] vehicle," as demonstrated by the discrepancies in the

weight and physical characteristics of both samples.  (D.I. 3 at 15-17; D.I. 18 at 27; D.I. 23 at 6)

According to Petitioner, defense counsel "would have been successful in excluding the alleged

cocaine had she objected to its admission."  (D.I. 23 at 5)

Petitioner presented the same ground for relief in his Rule 61 proceeding, which the

Superior Court denied as meritless.  (D.I. 16 at 220-224; D.I. 17 at 18-28; D.I. 19-11 at 289-300)

The Delaware Supreme Court affirmed that decision "on the basis of and for the reasons

assigned in [the Superior Court's] opinion dated June 29, 2017." *Brown*, 2018 WL 921985, at

*1. Given the Delaware Supreme Court's reliance on the Superior Court's decision, Claim One

will only warrant habeas relief if the Superior Court's decision was either contrary to, or an

unreasonable application of, clearly established federal law. *See Wilson v. Sellers*, 138 S. Ct.

1188, 1193-94 (2018) (reiterating that when a higher court affirms a lower court's judgment

without an opinion or other explanation, federal habeas law employs a "look through"

presumption and assumes that the later unexplained order upholding a lower court's reasoned

judgment rests upon the same grounds as the lower court judgment*); Ylst v. Nunnemaker*, 501

U.S. 797, 804 (1991) (under the "look through" doctrine, "where there has been one reasoned

state judgment rejecting a federal claim, later unexplained orders upholding that judgment or

rejecting the same claim rest upon the same ground.").

The clearly established Supreme Court precedent governing ineffective assistance of

counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S.

668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first

*Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an

objective standard of reasonableness," with reasonableness being judged under professional

norms prevailing at the time counsel rendered assistance. *See Strickland*, 466 U.S. at 688.

Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine

confidence in the outcome." *Id.*

Finally, in order to sustain an ineffective assistance of counsel claim, a petitioner must

make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.

*See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that the representation was professionally reasonable. *See Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Superior Court correctly identified the *Strickland* standard applicable to Petitioner's ineffective assistance of counsel allegation. Consequently, the Superior Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court must also determine if the Superior Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the Court must review the Delaware state courts' denial of Petitioner's ineffective assistance of counsel allegation through a "doubly deferential" lens. *Id.* "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

When denying Claim One in Petitioner's Rule 61 proceeding, the Superior Court opined:

At trial, the Court exercised its discretion, taking into consideration the standard enumerated in *Tricoche* [*v. State*, 525 A.2d 151, 153 (Del. 1987)] and D.R.E. 901(a), and allowed the drug evidence to be admitted.  [Petitioner's] central argument is that there were too many discrepancies between [] Detective Sutton's report and testimony, and Bajwa's report and testimony, including regarding the alleged type of cocaine (powder vs. crack), and the weight of the cocaine, to support a "reasonable probability" that there had been no tampering or misidentification of the evidence.  This argument is without merit.

Bajwa's explanation of the differences between the amounts reported and the type of cocaine observed in each bag satisfies a reasonable probability that the evidence had not been misidentified. The weights measured by Detective Sutton were while the drugs were within their packaging, whereas when weighed by Bajwa, only the drugs were weighed.  This case is much like *State v. Anzara Brown*, [117 A.3d 568, 579 (Del. 2015)] where the amount of drugs seized from Defendant after his arrest and the amount of drugs logged into evidence by OCME roughly matched, and both amounts of the larger bags were more than 20 grams of cocaine, the minimum requirement for a Tier 4 offense.  Here, the discrepancies in weight can be attributed to the different manner [in which] the cocaine was weighed.

The Delaware State Police knew that [Petitioner] was going to deliver cocaine to Lunnon, . . ., purportedly in a mixture of crack and powder form.  The mere fact that what was seized was identified as crack cocaine does not destroy the reasonable probability that there was no tampering or misidentification of the evidence.

Moreover, the State presented the witnesses necessary to establish the chain of custody, including the seizing officer, Officer Sutton, and the forensic chemist, Bajwa.  Any breaks in the chain of custody go only to the weight, not the admissibility, of the evidence. Because there was a reasonable probability at the time of [Petitioner's] trial that the evidence had not been misidentified or adulterated, the Court finds [Petitioner's] claim that counsel was ineffective for failing to object to the admission of the drug evidence to be meritless.

(D.I. 16 at 222-224) (footnotes omitted)

    As an initial matter, Petitioner contends that the Superior Court unreasonably determined

the facts in light of the evidence presented at trial, because:

[T]he suspected cocaine analyzed by Mr. Bajwa at the OCME shared very few similarities with the substances recovered from [Petitioner's] vehicle. Mr. Bajwa's report and testimony detailed the analysis of four bags of chunky white substance weighting 91.04 grams, and three bags of a chunky white substance, weighing 125.53 grams. Mr. Bajwa also concluded that all of the substances he tested were crack cocaine. Photographs of the crack cocaine analyzed by Mr. Bajwa, and later admitted into evidence at [Petitioner's] trial, depict chunky discolored substances bearing no similarities to what Detective Sutton described as being recovered nor what was photographed at the crime scene. . . . Thus, it is clear on the record, contrary to the State Court findings, that the alleged crack cocaine analyzed by Mr. Bajwa and admitted into evidence was not the same substances recovered from [Petitioner's] vehicle.

(D.I. 18 at 26-27)  Contrary to Petitioner's argument, however, the record supports the Superior

Court's factual determination that there was a reasonable probability that the evidence had not

been tampered with or misidentified.[4]  The forensic analysis in Petitioner's case revealed that all

of the drugs recovered by the police was crack cocaine.  The Superior Court thoroughly reviewed

the evidence concerning the manner in which the drugs had been seized, weighed, recorded,

---

[4]For instance, in his police report, Detective Sutton described finding "a black plastic bag that contained several plastic bags of white powder substance that appeared similar to cocaine," which the police officers had seen in plain view inside the vehicle that Petitioner was driving. (D.I. 19-10 at 33)  Detective Sutton's police report also described his retrieving the black plastic bag and inventorying its contents, which included three bags of suspected powder cocaine weighing a total of 128.2 grams, and four bags of suspected crack cocaine weighing a total of 100.8 grams. (*Id*. at 34)  According to his report, Detective Sutton field-tested the substances, which tested positive for cocaine. (*Id*.)  During the trial, Detective Sutton testified that he had retrieved the cocaine from inside the car, had placed the drugs into evidence envelopes, and had deposited the envelopes into the police evidence locker. (*See* D.I. 19-11 at 6)  Detective Sutton also confirmed that the police had used the envelopes admitted at trial to collect the drugs from the car. (*See id*. at 6-7)  Bajwa, the OCME's forensic chemist who had analyzed the substances, testified at trial, and his May 2012 lab report was admitted into evidence. (*Id*. at 1, 38-39)  In the lab report, Bajwa described the evidence as three plastic bags containing a white chunky substance with a total net weight of 125.53 grams, and four plastic bags containing a white chunky substance with a total net weight of 91.04 grams. (*Id*. at 1, 38-40)  During cross-examination, Detective Sutton explained that some of the cocaine differed in weight from the lab report because he had weighed the substance while packaged. (*Id*. at 15)  In comparison, Bajwa said that he had weighed the substances without their packaging (*Id*. at 39), and the net weights in the lab report corroborated his testimony (*Id*. at 1).

stored, and tested, and concluded that any discrepancy in the drug weights was due to different methods of weighing the drugs.  The Superior Court also determined that any description of the physical appearance of the drugs (*i.e.*, powder or chunky substance) was not relevant to the conclusion that the drugs recovered tested positive for cocaine.  Given this record, the Court concludes that the Superior Court reasonably determined the facts by finding that the drug evidence had not been misidentified or adulterated.

The Court also concludes that the Superior Court reasonably applied *Strickland* in denying Claim One.  As discussed, the Superior Court considered Petitioner's instant evidence tampering/misidentification argument and determined that any discrepancy in the drug weights was due to the fact that Detective Sutton and Bajwa had weighed the drugs differently, and not due to evidence tampering.  Under Delaware law, such discrepancies and any breaks in the chain of custody go to the weight of the evidence, not to its admissibility.  *See McNally v. State*, 980 A.3d 364, 371 (Del. 2009).  Consequently, a motion to exclude the evidence premised on an inadequate chain of custody/misidentification of the seized drugs had no reasonable probability of success.

Based on the foregoing, the Court concludes that defense counsel did not perform deficiently by failing to raise a non-meritorious objection to the admission of the drug evidence. In turn, since there is no indication that the drugs were tampered with, and the discrepancies in the drug appearances were argued to the jury (D.I. 19-12 at 14), the Court concludes that Petitioner cannot demonstrate a reasonable probability that the outcome of his trial would have been different but for defense counsel's failure to object to the drug evidence on the misidentification/chain of custody issue.    Accordingly, the Court will deny Claim One.

### B. Claim Two: *Brady*/Due Process Violation

In Claim Two, Petitioner alleges that the State violated *Brady v. Maryland* by failing to timely provide him with exculpatory and impeachment information regarding the OCME misconduct. (D.I. 18 at 33)  Petitioner also asserts that, "prior to trial, the State failed to disclose to [him] the existence of and details surrounding the systemic operation failings of the OCME" and the misconduct of Bajwa and other OCME employees. (*Id.* at 35)

In Petitioner's Rule 61 proceeding, the Superior Court denied Claim Two as procedurally barred under Delaware Superior Court Criminal Rule 61(i)(3). (D.I. 16 at 217)  By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984) that its decision rested on state law grounds. In turn, Delaware Superior Court Criminal Rule 61(i)(3) is an independent and adequate state procedural rule precluding federal habeas review of a claim's merits absent a showing of cause and prejudice, or a miscarriage of justice. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005).  Thus, the Court cannot review the merits of Claim Two absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the Claim is not reviewed.

In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  This "duty to disclose such evidence is applicable even though there has been no request by the accused," and includes "impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 280 (1999).  "Such evidence is

material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* "In order to comply with *Brady*, therefore, the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." *Id.* at 281 (cleaned up). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id.* at 281-82.

In the context of procedural default, "cause and prejudice parallel two of the three components of the alleged *Brady* violation itself." *Strickler*, 527 U.S. at 282. The suppression by the prosecution of evidence favorable to the accused provides cause to excuse the petitioner's procedural default, but unless the evidence is "material" under *Brady*, the petitioner is unable to demonstrate "sufficient prejudice to overcome the procedural default." *Id.* Therefore, if Petitioner establishes the elements of his *Brady* claim, then he will also establish cause and prejudice to excuse his procedural default of the claim.

### 1. Suppression of OCME misconduct evidence/cause for default

The Delaware Supreme Court has held that, "because the wrongdoing at the OCME was not known until 2014, incidents not falling within the relevant time period fail to qualify as *Brady* violations." *Cannon v. State*, 127 A.3d 1164, 1169 (Del. 2015). Since Petitioner's trial took place in 2013, the State contends that Petitioner cannot establish cause for his default because he cannot show that the State suppressed evidence of the OCME misconduct. (D.I. 21 at 18-21) In response, Petitioner argues that, even though the State did not have actual knowledge

of the OCME misconduct until 2014, the OCME's knowledge of its own misconduct going back as far as 2007 should be imputed to the State.  (D.I. 18 at 37-42)

As noted above, Petitioner's failure to establish all three elements of a *Brady* claim will preclude him from demonstrating cause and prejudice.  Since Claim Two can be resolved more expeditiously by addressing *Brady*'s materiality element, the Court will refrain from addressing Petitioner's "suppression-by-imputation-of-knowledge" argument.   (D.I. 18 at 40-44)

### 2.  Materiality of OCME misconduct evidence/prejudice from default

Petitioner contends that the State violated *Brady* by failing to disclose the following information prior to his trial in 2013:

> 1. [T]he existence of and the details surrounding the systemic operation failings to the OCME which resulted in the termination/resignation and prosecution of Chief Medical Examiner Richard Callery, Forensic Evidence Specialist James Woodson, and Forensic Chemist Farnam Daneshgar as well as the questioning of Forensic Evidence Specialist/Secretary Aretha Bailey.
>
> 2. [T]he misconduct of Forensic Chemist Irshad Bajwa, who was the chemist in this case, Forensic Chemist Bipin Mody, and Forensic Chemist Patricia Phillips which resulted in their termination/resignation from the OCME.
>
> 3. [T]hat most, if not all, employees of the OCME had credibility issues to the extent that the State was not willing to use any employee as a potential witness in the criminal prosecution of Farnam Daneshgar.

(D.I. 18 at 35-36) Petitioner asserts that the "materiality of this undisclosed *Brady* information is made apparent through the [February and March 2016] reports and opinions rendered by Joseph Bono, [Petitioner's] independent Forensic Science Consultant." (*Id.* at 36)  In those reports, Mr. Bono opined that: (1) the "OCME practices violated forensic quality standards which in turn diminished the integrity of the chain of custody of evidence stored at the OCME and the testing

of evidence by the OCME"; and (2) the OCME's failures "to comply with accreditation and testing standards […] could have resulted in the OCME's accreditation being suspended or being placed on probation." (*Id.*)

The Court is not persuaded that the OCME misconduct evidence identified by Petitioner was material. As an initial matter, the Court notes that Petitioner has not established that any actual evidence tampering occurred in his own case. The evidence of OCME misconduct identified by Petitioner constituted impeachment evidence, not exculpatory evidence.[5] The OCME misconduct evidence Petitioner has provided in this proceeding does not rebut the Superior Court's factual determination in his Rule 61 proceeding that Petitioner failed to demonstrate that the general drug testing process lacked integrity or that his case was actually affected by any potential irregularities in the testing process. Moreover, the evidence of OCME misconduct identified by Petitioner (including the evidence Petitioner provided to support his imputation/suppression argument[6]) is mostly irrelevant to his case and would have been inadmissible at trial. Petitioner describes the problems at the OCME in general and somewhat speculative terms, and does not connect those problems to the drug testing that occurred in his case. Notably, the incidents involving Bajwa, Bipin Mody, and Patricia Phillips occurred after Petitioner's trial.[7] Given the generic quality and tenuous connection between the evidence of

---

[5]*See Scarborough v. Metzger*, 2018 WL 4344984, at *7 (D. Del. Sept. 10, 2018).

[6]Petitioner references email chains from 2007 and 2010 between the OCME and the New Castle County Police Department and an interview he conducted of two former employees of the OCME – former Forensic Chemist Farnam Daneshgar and an unidentified former OCME employee ("CS1"). (D.I. 18 at 36-43) The majority of this evidence, however, is unrelated to Petitioner's case, and does not demonstrate that OCME employees were planting drugs to falsify test results, or that law enforcement was aware of systemic and potentially criminal problems at the OCME before 2014.

[7]Bajwa was placed on administrative leave in October 2015 for reasons unrelated to Petitioner's case. (D.I. 19-1 at 13-14; D.I. 19-11 at 214)  Mr. Mody was placed on administrative leave in

OCME misconduct at issue here and Petitioner's case, the Court cannot conclude that there is a reasonable probability that the outcome of Petitioner's trial would have been different had Petitioner's evidence of OCME misconduct been disclosed to him prior to his trial.

The substantial evidence of Petitioner's guilt creates an additional roadblock to establishing the materiality of the OCME misconduct evidence. Here, Petitioner agreed to sell eight ounces of cocaine to a confidential informant working with the police. Both the police officer and the confidential information testified about their first-hand knowledge of the transaction. Prior to the transaction taking place, Petitioner was stopped and police found nearly eight ounces of cocaine and firearms in the car that he had been driving. The drugs recovered from the car field-tested positive for cocaine. In short, the jury had ample evidence upon which to convict Petitioner, and his inability to impeach a witness from the OCME absent any evidence that employee misconduct at the OCME affected the testing in his case precludes Petitioner from satisfying *Brady*'s materiality element. Given these circumstances, Petitioner has failed to demonstrate a reasonable probability that the outcome of his trial would have been different had evidence of the OCME misconduct been disclosed to him prior to his trial which, in turn, prevents him from demonstrating prejudice sufficient to overcome his default.

Finally, Petitioner has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim Two as procedurally barred.

---

January 2016 and, after reviewing his personnel file, the Superior Court noted in another case that the problems occurred mostly in 2015. ( D.I. 19-11 at 369-71) The events leading to Ms. Phillips' suspension and resignation began in October 2014. *See Anzara Brown*, 117 A.3d at 575.

### C. Request for Evidentiary Hearing

The Superior Court denied Petitioner's request for an evidentiary hearing in his Rule 61 proceeding after concluding that further expansion of the factual record was unnecessary. Petitioner contends that the Superior Court's refusal to conduct an evidentiary hearing violated his right to due process.  He  also asks the Court to hold an evidentiary hearing in this proceeding in order "to allow [him] to present witnesses and evidence concerning his postconviction claims." (D.I. 18 at 45)

#### 1. Due process argument

It is not the province of a federal habeas court to determine whether state courts have properly applied their own evidentiary rules. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Rather, the only question for a habeas court is "whether the [challenged evidentiary decision or instruction] by itself so infected the entire trial that the resulting conviction violates Due Process." *Id.* at 72.

Here, Petitioner has not shown that the absence of an evidentiary hearing for the instant two Claims denied him rights guaranteed by the due process clause.  Delaware Superior Court Criminal Rule 61(h) grants the Superior Court discretion in deciding whether to conduct an evidentiary hearing in connection with a Rule 61 post-conviction relief motion. *See* Del. Super. Ct. R. 61(h)(1),(3).  The Superior Court does not abuse its discretion in denying an evidentiary hearing request if the record is sufficient to establish that the petitioner's claims lack merit. *See Johnson v. State*, 129 A.3d 882 (Table), 2015 WL 8528889, at *4 (Del.  Dec. 10, 2015).

In denying Petitioner's request for an evidentiary hearing, the Superior Court concluded that: (1) "the State made a threshold showing of the admissibility of the drug evidence which was seized in relation to [Petitioner's] trial"; and (2) it would "not displace the decision of the jurors

who were able to view the evidence and hear testimony, and resolve any possible discrepancies that may have existed." (D.I. 16 at 219-20)  The Superior Court noted, "Although defense counsel did not object to the admission of the drug evidence, she did vigorously cross-examine both Detective Sutton and Bajwa about the alleged discrepancies in the nature and amount of drugs seized." (*Id.* at 220).  Relying upon the Delaware Supreme Court's decision in *Cannon v. State*, 127 A.3d 1164, 1168-69 (Del. 2015), the Superior Court concluded that an evidentiary hearing was not necessary "to determine what, if any, knowledge the State possessed, at the time of [Petitioner's] trial, of the misconduct at the OCME." (D.I. 16 at 220)

The Superior Court's reasons for denying Petitioner's request for a hearing demonstrate that it had sufficient information within the record and pleadings to assess the validity of Petitioner's claims.  Therefore, the Court concludes that the Superior Court did not violate Petitioner's due process rights by denying his request for an evidentiary hearing.

### 2.  Request for an evidentiary hearing in this proceeding

A habeas petitioner is not entitled to an evidentiary hearing in most cases.  The Supreme Court has explained, "Although state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Cullen v. Pinholster*, 563 U.S. 170, 186 (2011).  Typically, requests for an evidentiary hearing in a federal habeas proceeding are evaluated under 28 U.S.C. § 2254(e)(2), which provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that
>
> > (A)  the claim relies on –
> >
> > > (i)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

"In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007); *see also* Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254. In addition, the Third Circuit has held that § 2254(e)(2) does not bar an evidentiary hearing to determine if a petitioner can establish cause and prejudice to avoid a procedural default. *See Cristin v. Brennan*, 281 F.3d 404, 416-17 (3d Cir. 2002) ("[T]he plain meaning of § 2254(e)(2)'s introductory language does not preclude federal hearings on excuses for procedural default at the state level."). Consequently, it is within the Court's discretion to hold an evidentiary hearing to permit Petitioner to present witnesses and evidence to support Claim One and to establish cause and prejudice for Claim Two.

When deciding whether to grant a hearing, the "court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations," taking into consideration the "deferential standards prescribed by 28 U.S.C. § 2254." *Schriro*, 550 U.S. at 474. An evidentiary hearing is not necessary if the issues can be resolved by reference to the record developed in the state courts. *Id*. The Court has determined that Claim One is meritless under § 2254(d) and Claim Two is procedurally barred. Petitioner's assertions do not

demonstrate how a hearing would advance his arguments.  Therefore, the Court will deny

Petitioner's request for an evidentiary hearing.

## IV.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether

to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of

appealability is appropriate when a petitioner makes a "substantial showing of the denial of a

constitutional right" by demonstrating "that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000).  If a federal court denies a habeas petition on procedural

grounds without reaching the underlying constitutional claims, the court is not required to issue a

certificate of appealability unless the petitioner demonstrates that jurists of reason would find it

debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and

(2) whether the court was correct in its procedural ruling.  *Id*

The Court has concluded that Petitioner's habeas claims do not warrant relief.  In the

Court's view, reasonable jurists would not find it debatable that defense counsel did not provide

ineffective assistance, that Petitioner's *Brady v. Maryland* claim is procedurally barred, and that

the Delaware state courts' refusal to conduct an evidentiary hearing did not violate Petitioner's

due process rights.  Accordingly, the Court declines to issue a certificate of appealability.

## V.   CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus

Pursuant To 28 U.S.C. § 2254 is **DENIED** without an evidentiary hearing.

An appropriate Order will be entered.